**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BONNIE K. YANEZ GONZALEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:10-CV-02003-O (BF)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Bonnie K. Yanez Gonzalez ("Plaintiff") brings this action pursuant to section 405(g) of the

Social Security Act (the "Act"), 42 U.S.C. § 405(g).  She seeks review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application for

Supplemental Security Income ("SSI") under Title XVI of the Act.  The Court has considered

Plaintiff's Brief, filed January 6, 2011, Defendant's Brief, filed February 15, 2011, and Plaintiff's

Reply Brief, filed March 2, 2011.  For the following reasons, the Court recommends a finding that

the Commissioner's decision is AFFIRMED.

## I. BACKGROUND[1]

*A. Procedural History*

On July 14, 2008, Plaintiff filed her SSI application for Title XVI benefits, alleging a

disability onset date of April 8, 2008.  (Tr. 10.)  The claim was denied initially and upon

reconsideration.  (*Id.*)  Plaintiff timely requested a hearing before an administrative law judge

("ALJ"), and a hearing was held on May 19, 2009 in Dallas, Texas. (*Id.*)  Plaintiff testified at the

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

hearing, as well as a vocational expert ("VE").  (*Id.*)  Plaintiff was represented by counsel, Ronald

D. Honig, at the hearing.  (*Id.*)  The ALJ issued an unfavorable decision on August 21, 2009, finding

Plaintiff had not been under a disability from the date of her application through the date of the

decision.  (Tr. 19.)  Plaintiff requested review of the ALJ's decision by the Appeals Council, but

review was denied on August 13, 2010.  (Pl. Br. at 2.)  Plaintiff filed this case on October 5, 2010,

seeking judicial review of the administrative proceedings (doc. 1.)  This matter is ripe for

consideration on the merits.

### B. Factual History

1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is March 31, 1971.  (Tr. 106.)  She has a high school equivalency

diploma.  (Tr. 24.)  Plaintiff has no past relevant work.  (Tr. 47.)

2. Plaintiff's Relevant Medical Evidence

On September 9, 2008, Plaintiff went to Parkland Hospital's Sleep Disorder Center and

submitted to a sleep study.  (Tr. 233.)  Plaintiff's height was recorded as 5 feet 9 inches tall and her

weight as 294 pounds.  (*Id.*)  It was noted that she had a history of obesity and asthma.  (*Id.*)  The

results of the study were abnormal with findings consistent with severe obstructive sleep apnea.  (Tr.

235.)

In May 2008, Plaintiff was admitted to Parkland Hospital for a pelvic abscess.  (Tr. 242.)

The following conditions were noted: bipolar disorder, asthma, gastroesophageal reflux and

Hepatitis C.  (*Id.*)  Plaintiff was then again admitted in June 2008 for a recurrent vaginal cuff

abscess.  (Tr. 253.)  Both abscesses were drained.  (Tr. 243, 253.)  After a CT scan, Plaintiff was

noted to have a large pelvic mass.  (Tr. 254.)  Plaintiff was also hospitalized in July 2008 for

complaints of abdominal pain and flank pain. (Tr. 237.)

At the request of the State agency, Plaintiff was evaluated by Dr. Ronald Anderson on September 22, 2008. (Tr. 325-29.) Plaintiff complained of anxiety, schizophrenia, anger problems and bipolar disorder. (Tr. 325.) She reported a history of abuse, multiple hospitalizations for emotional problems and stated that she has been receiving treatment for those problems at Dallas Metrocare on and off since 2001. (Tr. 326.) Dr. Anderson noted that Plaintiff's thought process was fairly well organized and there were no delusions present. (Tr. 327.) Plaintiff reported hearing voices, but she did not appear to be psychotic. Dr. Anderson noted the possibility of malingering needed to be considered. (*Id.*) Plaintiff had a full range of affect and spoke very nonchalantly about all of her problems. (*Id.*) She was oriented in regard to time, place and person, but her remote memory appeared poor. (Tr. 328.) Dr. Anderson diagnosed her with Bipolar I Disorder and Poly-substance Dependence (in stated remission), with borderline and anti-social personality traits. (*Id.*) Plaintiff was given a Global Assessment of Functioning ("GAF") score of 50 to 55.[2]

On October 30, 2008, Plaintiff was evaluated by a State agency consulting physician, Dr. Harold Nachimson. (Tr. 13.) Plaintiff complained of problems with her bladder, lower back, and Hepatitis C. (Tr. 332.) She reported that she used a cane occasionally, but no braces. (Tr. 333.) Plaintiff also reported doing self-care very slowly, some cooking with supervision, light housework, and walking no more than one block. (*Id.*) She further complained of difficulty with her hearing, sleep apnea and asthma, gastric reflux, increased urinary frequency, dysuria and pain in her knees and ankles. (*Id.*) Dr. Nachimson noted that Plaintiff was morbidly obese. (*Id.*) He also noted

---

[2]   A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See id.*

3

Plaintiff's weight at 351 pounds and a height of 5 feet 7 1/4 inches tall.  (Tr. 334.)  Further, Dr. Nachimson noted that Plaintiff had a waddling gait, trace edema of both lower extremities, discomfort with flexion of both knees.  He was unable to ascertain scoliosis  or ankle and knee reflexes because of her huge girth.  (*Id*.)  A lumbar spine x-ray found degenerative disc disease present at L4-L5 and L5-S1 with grade 1 spondylolisthesis and probable spondylolysis.  (Tr. 338.) Dr. Nachimson's clinical impression was lumbar myofascitis with possible discogenic disease, morbid obesity with a body mass index of 54, past illegal drug usage, asthma, sleep apnea, bipolar disorder, polysubstance dependence and panic disorder without agoraphobia, and degenerative joint disease.  (Tr. 335.)

Plaintiff submitted records from Dallas Metrocare Services ("Metrocare"), which indicated she was diagnosed with Bipolar II Disorder, Cocaine Dependence, and Post-Traumatic Stress Disorder.  (Tr. 299.)  She complained of poor sleep, excessive appetite, sadness, crying spells, anxiety, isolation, fear/paranoia, visual hallucinations, irritability, anger issues, urges to harm others, racing thoughts, restlessness, and poor concentration and energy.  (*Id*.)  She reported a history of abuse, including sexual abuse by her father when she was four years old.  (*Id*.)  She reported being separated from an abusive husband.  (*Id*.)  Plaintiff reported a history of cocaine abuse, but none for the last five years.  She also reported her last use of cannabis as 1-2 months prior.  (Tr. 300.)  In August 2008, clinical examinations noted some symptoms of post-traumatic stress disorder, normal speech, psychomotor retardation, but no sign of psychotic features.  (Tr. 307.)  The clinician noted that Plaintiff's mental status was alert; she was oriented to time, person, location and situation; and she denied suicidal or homicidal thoughts.  (Tr. 320.)  On December 30, 2008, Plaintiff was again

4

treated at Metrocare for her Bipolar Disorder, and she was given a GAF score of 42.[3]   Plaintiff was prescribed Wellbutrin, Prozac, Seroquel and Risperdal.  (Tr. 14.)  Records from 2009 indicated the medications were effective and helping Plaintiff.  (*Id.*)  However, Plaintiff still maintained a GAF score of 42 on March 11, 2009.  Additionally, Plaintiff's degree of functional impairment was rated at a level 3, suggesting a moderate degree of impairment.  (Tr. 477.)

Dr. Moira Dolan, a State agency non-examining physician, reviewed Plaintiff's medical evidence and assessed her physical residual functional capacity.  (Tr. 353-60.)  She established Plaintiff's exertional limitations at: lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk at least 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  (Tr. 354.)  Dr. Dolan noted her postural limitations to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling.  Further, Plaintiff is never to climb ladders, ropes or scaffolds.  (Tr. 355.)  Dr. Dolan noted her impairments as lumbar DDD and obesity.  (Tr. 353.)

Dr. Margaret Meyer, a state agency non-examining psychologist, reviewed Plaintiff's medical evidence and assessed her mental residual functional capacity.  (Tr. 361-64.)  The assessment found Plaintiff to be moderately limited in ten categories, including the ability to understand; remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace

---

[3]   A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (DSM).

without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (Tr. 361-62.)  Dr. Meyer further clarified that Plaintiff could understand, remember and carry out detailed, but not complex instructions.  (Tr. 363.)  She also noted that the alleged limitations were not supported by the information in the file.  (*Id*.)  Dr. Meyer completed a report called a psychiatric review technique on October 3, 2008, whereby she found Plaintiff to have severe impairments of affective disorder and personality disorder.  (Tr. 339.)  She also found Plaintiff to have an impairment of substance addition disorder, in remission.  (Tr. 339, 347.)

### C. The ALJ's Findings

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 14, 2008, the application date.  (Tr. 12.)  Second, he found Plaintiff to have the severe impairments of Lumbar Degenerative Disc Disease, Degenerative Joint Disease of the Knee, Obesity, Sleep Apnea, Bipolar Disorder, and Borderline Personality Disorder with Polysubstance Abuse in Remission.  (*Id*.)  Third, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Regulations.  (Tr. 14.)

Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, but only stand or walk two of eight hours.  (Tr. 15.)  Plaintiff must have the option to stand and stretch every thirty to forty-five minutes.  (*Id*.)  She should avoid climbing, using ladders, heights or work on scaffolds. (*Id*.)  Plaintiff can perform postural activity at the occasional level.  (*Id*.)  She should avoid vibration, hazards and machinery.  (*Id*.)  Plaintiff can understand, carry out and remember short and

simple tasks and instructions.  (*Id.*)

Fifth, the ALJ determined that Plaintiff has no past relevant work. (Tr. 18.) Sixth, he stated that Plaintiff was born on March 31, 1971 and was thirty-seven years old, which is defined as a younger individual age 18-44, on the date the application was filed.  (*Id.*)  Seventh, the ALJ noted that Plaintiff has at least a high school education and is able to communicate in English.  (*Id.*) Eighth, he determined that transferability of job skills is not an issue because Plaintiff does not have past relevant work.  Next, the ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.  (*Id.*)  Finally, he found that Plaintiff has not been under a disability, as defined by the Act, since July 14, 2008, the date the application was filed.  (Tr. 19.)

### D. Post-Hearing Medical Evidence

A medical source statement was completed by Plaintiff's treating psychiatrist, Dr. K. Luszczynska on May 21, 2009.  (Tr. 537-39.)  Only the Appeals Council was presented with this statement, as it wasn't obtained until two days after the hearing in front of the ALJ.   Dr. Luszczynska advised that the Plaintiff has an extreme loss of ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; and to finish a normal work week without interruptions from psychologically based symptoms. (Tr. 537-38.) The doctor estimated that a substantial loss of ability to carry out detailed but uninvolved written or oral instructions; maintain attention and concentration for an extended period; perform at a consistent pace without an unreasonable number and length of rest periods; act appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond

appropriately to changes in a routine work setting; and cope with normal work stress.  (*Id*.)  Dr. Luszczynska also indicated that the Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month.  (Tr. 539.)  Finally, the doctor diagnosed Plaintiff with Bipolar II Disorder, Cocaine Dependence and Posttraumatic Stress Disorder.  (Tr. 538.)

## II. ANALYSIS

### A. Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Act.  *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.   An individual who does not have a "severe impairment" will not be found to be disabled.

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.   If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.   If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional

8

capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at Step 5 to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be shifted either by reference to the Medical-Vocational Guidelines of the Regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### B. Issues for Review

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he erred by (1) failing to consider the impact of all of the Plaintiff's medically determinable

impairments; (2) failing to consider expert medical opinion evidence; and (3) failing to properly evaluate Plaintiff's credibility.  Defendant counters that (1) the ALJ properly considered all of Plaintiff's impairments; (2) the ALJ properly considered the expert medical opinion evidence; and (3) the ALJ properly evaluated Plaintiff's credibility.

### C. Medically Determinable Impairments

Plaintiff argues, in essence, that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly consider all of Plaintiff's functional limitations.

A person's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments.  20 CFR §404.1545.  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  Social Security Ruling 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  The ALJ is responsible for determining a claimant's RFC before considering step four of the sequential evaluation process, if the claimant is at the ALJ hearing level. 20 CFR §§§ 404.1546(c), 404.1520(e), and 416.920(e).  In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant.  20 CFR §404.1545(a)(3).  The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered.  SSR 96-8p at *3-5.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96–8p at *5.

10

The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See*, *e.g.,* SSR 86–8, 1986 WL 68636, at *8 (S.S.A.1986), superseded by SSR 91–7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

Here, the ALJ decided the matter at step five, finding that Plaintiff could perform other work which exists in significant numbers in the economy. In order to do so, the ALJ had to assess Plaintiff's RFC. He found that Plaintiff had the physical RFC to perform sedentary work because she could only lift or carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, and only stand or walk two of eight hours.[4] (Tr. 15.) He determined that Plaintiff must have the option to stand and stretch every thirty to forty-five minutes. (*Id.*) He also found that Plaintiff can perform postural activity at the occasional level, but she should avoid climbing, using ladders, heights, work on scaffolds, vibration, hazards and machinery. (*Id.*) The ALJ found that Plaintiff had the mental RFC to understand, carry out and remember short and simple tasks and instructions. (*Id.*)

In support of his RFC assessment, the ALJ considered, *inter alia,* the following: (1) records from Parkland Memorial Hospital diagnosing Plaintiff with obesity and obstructive sleep

---

[4] Sedentary work is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 CFR §404.1567(a).

apnea; (2) records from Metrocare Services regarding Plaintiff's mental illnesses; (3) an evaluation by Dr. Ronald Anderson diagnosing Plaintiff with Bipolar I Disorder and Polysubstance Dependence (in stated remission) with borderline and anti-social personality traits; (4) an examination by Dr. Harold Nachimson diagnosing Plaintiff with lumbar myofascitis with possible discogenic disease and morbid obesity; (5) Dr. Dolan's assessment of Plaintiff's functional ability to perform sedentary exertional activities; and (6) Dr. Meyer's assessment of Plaintiff's mental RFC, opining that she had the capacity to understand, carry out and remember detailed but not complex tasks and instructions.  (Tr. 13-14.)

First, Plaintiff contends that the ALJ's RFC should have included Plaintiff's limitation of moderate difficulty with regard to concentration, persistence and pace.  (Pl. Br. at 11.)  While it is true that the ALJ stated this as a limitation, he was speaking in reference to the "paragraph B" criteria listed in the psychiatric review technique performed by Dr. Meyer.  (Tr. 15, 349.)  He then specifically stated that the "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  (Tr. 15.); *see* SSR 96-8p (stating that "[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [of the psychiatric review technique] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.")  The ALJ then went on to state that the mental RFC assessment performed at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment, and that Plaintiff's RFC reflects the degree of limitation found in the "paragraph B" criteria.  (Tr. 15.)  Thus, the ALJ did consider that "paragraph B" limitation of moderate difficulty with regard to concentration, persistence and pace, and included it, by its degree of

limitation, in limiting Plaintiff to short and simple tasks and instructions.  The ALJ's hypothetical question to the vocational expert ("VE") at the hearing included this limitation.  (Tr. 47.)  In her reply brief, Plaintiff argues that limiting a person to short and simple tasks and instructions does not incorporate moderate difficulties in concentration, persistence and pace, but Plaintiff fails to cite to any Fifth Circuit case law which supports her argument.  This Court finds that the ALJ included such functional limitation in his RFC assessment.

Next, Plaintiff argues that the ALJ should have considered Plaintiff's edema, need to elevate her legs, use of diuretic medication, antalgic gait, and use of a cane as functional limitations.  (Pl. Br. at 12-13.)  However, the ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Plaintiff's edema, need to elevate her legs, use of diuretic medication, antalgic gait, and use of a cane would not affect her ability to perform sustained work activity on a regular and continuing basis and, thus, should not be incorporated into the RFC determination.  Dr. Nachimson's examination of Plaintiff showed that she only had trace edema in her lower extremities, and a waddling gait but not an antalgic gait.  (Tr. 334.)  Plaintiff testified at the hearing regarding her need to elevate her legs and her use of diuretic medication and a cane, but there was no objective medical evidence supporting these problems.[5]  The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the evidence in the record.  *See Morris*, 864 F.2d at 336.

Finally, Plaintiff contends that the ALJ failed to properly consider Plaintiff's severe impairments of obesity and sleep apnea in his RFC assessment.  (Pl. Br. at 13-14.)  Specifically,

---

[5]  While Plaintiff did report to Dr. Nachimson that she used a cane occasionally, there was no objective medical evidence in the record as to the necessity of a cane.

Plaintiff argues that the ALJ failed to consider the non-exertional effects of obesity and sleep apnea on Plaintiff's ability to perform work-related activities. (*Id.*) However, in his findings, the ALJ specifically referenced SSR 02-1p, the policy on evaluating obesity, stating such things as "[t]he effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day." (Tr. 17.) He then continued "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea." (*Id.*) He then concluded by stating that "I have considered the effects of the claimant's obesity and included those effects within my determination of the claimant's residual functional capacity." (*Id.*) Thus, it is obvious that the ALJ was very aware that obesity and sleep apnea can cause non-exertional limitations on performance, and he ultimately determined, based on substantial medical evidence and other evidence in the record, that those non-exertional effects would be incorporated into the RFC as a limitation on performing jobs that only involve short and simple tasks and instructions.

The Court finds that the ALJ's RFC assessment is supported by substantial evidence and the ALJ properly considered all of Plaintiff's functional limitations.

### D. Expert Medical Opinion Evidence

Plaintiff contends that the ALJ failed to properly consider the expert medical opinion evidence of the state agency non-examining psychologist, Dr. Meyer, and Plaintiff's treating psychiatrist, Dr. Luszczynska. (Pl. Br. at 14.)

### a. State agency non-examining psychologist, Dr. Meyer

Dr. Margaret Meyer reviewed Plaintiff's medical evidence and assessed her mental residual functional capacity on October 3, 2008.  (Tr. 361-63.)  In her brief, Plaintiff argues that the ALJ failed to properly consider all of the limitations provided in section one of the assessment, and thus, Plaintiff's mental RFC is not supported by substantial evidence.[6]

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review.  20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96–6p, 1996 WL 374180, at *2–4 (S.S.A. July 2, 1996).  Pursuant to SSR 96–6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SSR 96–6p, 1996 WL 374180, at *2.  In addition, the regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made.  *See generally* 20 C.F.R. §§ 404.1527(b), 416.927(b).  The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. §§ 404.1427(d), 416.927(d)**.**

Here, the ALJ stated, at step three, that he agreed with Dr. Meyer's finding that Plaintiff's impairments were severe but did not meet or equal a listed impairment.  (Tr. 14-15.) He then went on to state that he agreed "with that finding because it is not inconsistent with the

---

[6]  The Court notes that Plaintiff actually argues that the ALJ did not consider the limitations in section two of the assessment.  (Pl. Br. at 14-15.)  However, since section two of the assessment is blank and Plaintiff's argument actually references section one, this Court's understanding is that Plaintiff meant to state section one and not two in her brief.

conclusions of the treating and consulting physicians." (Tr. 15.)

Section one of the mental RFC assessment found the Plaintiff to be moderately limited in ten categories, including the ability to understand; remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (Tr. 361-62.) In section three of the assessment, Dr. Meyer further clarified that Plaintiff could understand, remember and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in work settings. (Tr. 363.) She then stated that the alleged limitations were not supported by the information in the file. (*Id.*)

Contrary to Plaintiff's argument, this Court finds that the ALJ did consider the limitations in section one of the assessment and utilized the substantiated limitations in his RFC by limiting Plaintiff to the ability to understand, carry out and remember short and simple tasks and instructions. This Court agrees with Plaintiff that sections one and three of the assessment work together, and not independently, as section three of the form clearly instructs "[r]ecord the elaborations on the preceding capacities in this section. . . Include any information which clarifies limitation or function." (Tr. 363.) So, for example, a section one limitation provided that Plaintiff was moderately limited in her ability to get along with co-workers or peers without

16

distracting them or exhibiting behavioral extremes.  (Tr. 362.)  Dr. Meyer further clarified this limitation in section three by stating Plaintiff could interact adequately with co-workers and supervisors.  (Tr. 363.)  Thus, it is reasonable that the ALJ did not include that section one limitation in his RFC because Plaintiff was still able to interact adequately at work.  Just because the ALJ did not include every limitation in section one, doesn't mean that the limitations weren't properly considered.  As stated above, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.

The ALJ decided this case at step five, finding Plaintiff capable of performing jobs that exist in significant numbers in the national economy.  Specifically, at the hearing, the VE testified that Plaintiff could perform the jobs of Optical Goods Assembler, Lens Inserter, and Cutter and Paster.  (Tr. 47-48.)  In her brief, Plaintiff also argues that since the VE testified at the hearing that some of the section one limitations would render Plaintiff incapable of performing these three jobs, the ALJ's decision is not supported by substantial evidence.  (Pl. Br. at 16.)  However, the VE gave testimony regarding limitations of section one that the ALJ did not find to be supported by substantial evidence in the record.  Further, these section one limitations were further clarified in section three by Dr. Meyer explaining that Plaintiff could still interact adequately with co-workers and supervisors.  (*See* Tr. 361-63.)  Thus, the ALJ did not need to incorporate these limitations in his hypothetical question to the VE, and the VE's testimony regarding these limitations would not affect Plaintiff's ability to perform these three jobs.  *See Morris,* 864 F.2d at 336.

### b.  Treating psychiatrist, Dr. Luszczynska

In conjunction with her request for review by the Appeals Council, Plaintiff submitted new medical evidence obtained after the hearing.  (Tr. 537-39.)  These records show a diagnosis of Bipolar II Disorder with Cocaine Dependence and Posttraumatic Stress Disorder.  (Tr. 538.) An assessment of Plaintiff's ability to do work-related activities opines that Plaintiff has suffered an extreme loss of an ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances, and the ability to finish a normal work week without interruption from psychologically based symptoms.  (Tr. 537-38.)  Moreover, the assessment found that Plaintiff has suffered a substantial loss of an ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, maintain concentration for an extended period, maintain attention or stay on task for an extended period, perform at a consistent pace without an unreasonable number and length of rest periods or breaks, act appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, behave in an emotionally stable manner, respond appropriately to changes in a work setting, and cope with normal work stress.  (Tr. 537-38.)

On August 13, 2010, the Appeals Council denied Plaintiff's request for review, stating that "we considered the reasons you disagree with the decision and the additional evidence. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-4.)  In her brief, Plaintiff argues that the Appeals Council failed to properly consider the new medical evidence submitted by Plaintiff's treating psychiatrist.  (Pl. Br. at 16-18.)

The Regulations provide a claimant the opportunity to submit new and material evidence

to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision.  20 C.F.R § 404.970(b).  Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based.  *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).  A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported.  *Higginbotham v. Barnhart*, 163 F.App'x 279, 281-82 (5th Cir. 2006).

Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it.  *Higginbotham,* 405 F.3d at 335 n. 1 (referring to a memorandum from the Commissioner's Executive Direct of Appellate Operations dated July 1995).  Nevertheless, where new medical evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council can fully evaluate the treating source statement.  *See Brown v. Astrue,* No. 3-10-cv-00275-O-BK, 2010 WL 3895509, at *4-6 (N.D. Tex. Sept. 13, 2010; *Lee v. Astrue*, No. 3–10–CV–155–BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010); *Stewart v. Astrue*, No. 7–07–CV–052–BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept.18, 2008).

Here, the assessment completed by Dr. Luszczynska did not contain any new impairments that were not already incorporated in the ALJ's decision.  (Tr. 537-39.) Furthermore, the clinical signs of mental illness reported by the doctor were the exact same as those already indicated in the Metrocare records that the ALJ considered.  (Tr. 538.)  Finally,

although some of the limitations on Plaintiff's work-related activities indicate a more substantial

loss in her ability, this Court finds that those limitations don't dilute the record to such an extent

that the ALJ's decision would become insufficiently supported.  Therefore, since the new

medical evidence is not so inconsistent with the ALJ's findings that it undermines the ultimate

disability determination, the Appeals Council was not under a duty to provide a detailed

discussion about the assessment done by Dr. Luszczynska.  *See Brown,* 2010 WL 3895509 at *4-

6.  Accordingly, it is recommended the District Court not remand the case for further

consideration of the new medical evidence, as requested by Plaintiff.

### E. Evaluation of Credibility of Plaintiff

Plaintiff contends that substantial evidence does not support the ALJ's RFC finding

because the ALJ failed to properly evaluate the credibility of Plaintiff.  In determining the

Plaintiff's RFC, the ALJ must consider all the Plaintiff's symptoms and the extent to which they

are consistent with the objective medical evidence and other evidence.  20 C.F.R. §416.929.

There is a two-step process for evaluating symptoms: (1) the ALJ must determine whether there

are underlying medically determinable physical or mental impairments that could reasonably be

expected to produce the claimant's pain or other symptoms; and (2) the ALJ must evaluate the

intensity, persistence, and limiting effects of the claimant's symptoms and decide the extent to

which these symptoms limit the claimant's ability to perform basic work activities.  SSR 96-7p,

1996 WL 374186, *2.  If there are no medically determinable physical or mental impairments, or

if there is a medical impairment but it is not reasonably capable of producing the alleged pain or

symptoms, the symptoms cannot be found to affect the individual's basic work abilities.  *Id.*

If the claimant's statements regarding the intensity, persistence or limiting effects of their

symptoms are not consistent with the objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements. *Id.* at *1-2. There are certain factors the ALJ may consider when he needs additional information to evaluate the credibility of the claimant's statements: (1) daily activities of the claimant; (2) location, duration, frequency, and intensity of symptoms; (3) aggravating factors; (4) medication and its side effects; (5) treatment received for symptoms; (6) other measures used to relieve symptoms; and (7) any other factors concerning restrictions due to pain or symptoms. *Id.* at *3.

Here, the ALJ found that Plaintiff appeared to be sincere and genuine concerning the pain and limitations she was experiencing, however, her medical impairments were not "reasonably capable of producing" those symptoms. (Tr. 16.) The ALJ cited several reasons to support this determination. First, he stated that if he accepted Plaintiff's limitations as she described them, then she would be incapable of the completion of even sedentary functions. (Tr. 16.) Nevertheless, Plaintiff testified that she can cook, fold clothes, wash dishes for ten to fifteen minutes by hand, care for herself personally, and attend church occasionally. (*Id.*) The ALJ explained that Dr. Dolan, a non-examining source, opined that Plaintiff was capable of performing sedentary work because he found her able to lift 20 pounds occasionally and 10 pounds frequently, sit for six hours in an 8-hour work day and stand or walk two hours in an 8-hour work day. (Tr. 17.) The ALJ explained this opinion was supported by medical evidence and he gave it substantial weight. (*Id.*)

Next, the ALJ explained that the medical evidence simply does not support the degree of pain alleged by Plaintiff. (Tr. 16.) Plaintiff testified that she has daily pain in her back, knees and ankles. She can stand for 5 to 10 minutes before she develops pain in her back and feet.

Yet, she also testified that she can wash dishes for 10 to 15 minutes.  (*Id.*)  She testified that

Darvon helps the pain sometimes, but not all the time.  She testified that she can't walk across

the street, but she can carry a gallon of milk.  (*Id.*)  The ALJ also pointed out that Plaintiff has

never been hospitalized for depression and she has no thoughts of suicide.  The ALJ went

through the proper factors to assess Plaintiff's credibility and, ultimately determined, that her

statements regarding her symptoms and degree of pain alleged were not entirely credible because

they weren't supported by objective medical evidence.

Plaintiff argues in her brief that the new medical evidence submitted by Dr. Luszczynska

would have been supportive of Plaintiff's alleged pain and symptoms.  (Pl. Br. at 18-19.)

However, in his findings, the ALJ stressed that Plaintiff's physical pain and symptoms were not

supported by objective medical evidence.  (*See* Tr. 16-17.)  Dr. Luszczynska only performed a

mental assessment of Plaintiff, and as stated above, the ALJ considered treatment records from

Metrocare which spanned over a longer period of time than the doctor's newly provided one-

time assessment.  Plaintiff stated in her brief that Dr. Luszczynska specifically indicated some of

Plaintiff's alleged symptoms.  (Pl. Br. at 19.)  However, the only comments by the ALJ on the

credibility of Plaintiff's mental symptoms were that she was never hospitalized for depression

and she does not have thoughts of suicide.  (*See* Tr. 16.)  On her assessment, the doctor neither

indicated suicidal thoughts nor hospitalization of the Plaintiff for depression.  (*See* Tr. 537-39.)

Thus, Dr. Luszczynska's assessment would not have changed the ALJ's determination on the

credibility of Plaintiff.

Overall, the ALJ concluded that the medical record did not contain any objective

evidence to support Plaintiff's subjective complaints.  Subjective complaints must be

corroborated, at least in part, by objective evidence.  *See Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir. 1989).  Thus, Plaintiff's symptoms could not be found to affect her work abilities and substantial evidence supports the ALJ's RFC assessment.  *See* SSR 96-7p at *2.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court AFFIRM the Commissioner's final administrative decision and DISMISS Plaintiff's Complaint, with prejudice.

SO RECOMMENDED, January 26, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).